COMMONWEALTH *vs.* LEAMAN G. SNOW, JR.

No. 90-P-726.

Berkshire. December 4, 1990. - April 12, 1991.

Present: WARNER. C.J., SMITH, & IRELAND, JJ.

*Rape. Evidence,* Fresh complaint. *Practice, Criminal,* Argument by prosecutor, Instructions to jury.

At the trial of indictments for rape of a child without force, fresh complaint testimony as to one victim was properly admitted, and similar testimony with respect to the other victim, although admitted in error, posed no substantial risk of a miscarriage of justice in the circumstances. [445-447]

At a criminal trial certain misstatements of the facts and the law made by the prosecutor in his closing argument were not prejudicial in light of the prosecutor's entire argument, the evidence presented, and the judge's instructions to the jury. [447-448]

INDICTMENTS found and returned in the Superior Court Department on April 5, 1989.

The cases were tried before *Charles R. Alberti,* J.

*M. Page Kelley,* Committee for Public Counsel Services, for the defendant.

*Robert J. Carnes,* District Attorney, for the Commonwealth.

IRELAND, J. The defendant was charged with six counts of rape without force of each of two children, between September 1, 1988, and February 28, 1989. A Superior Court judge allowed the defendant's motion for a required finding of not guilty on ten of the twelve indictments, and the jury found the defendant guilty of one count of rape of each child. On appeal, the defendant argues that (1) the judge erred in admitting the fresh complaint testimony of two witnesses, and (2) there were prejudicial improprieties in the prosecutor's final argument.

The Commonwealth presented its case through the testimony of six witnesses: the two children, whom we shall call Susan and Michael; a Department of Social Services (DSS) investigator; a North Adams police department detective; a pediatrician who examined Susan; and the children's mother. The basic facts are not in dispute. There was evidence that the defendant lived with the two children, Susan (age five) and Michael (age seven), their mother, and the defendant's brother, Clyde Snow, in North Adams.[1]

Both children used anatomically correct dolls during part of their testimony. Michael said that the defendant had touched Michael's penis with his finger. Susan testified that the defendant had put his penis inside her "lots of times," that she had heard the defendant tell Michael to put his mouth on the defendant's penis, and had seen Michael do so "more than once." Using the dolls, Susan demonstrated how the defendant penetrated her and how he had put his penis inside Michael's mouth. She also said that the defendant "didn't want no one to tell." She testified that she told the DSS investigator that Clyde hurt her, and that when she went to see a doctor after that, she also told the doctor that Clyde had hurt her. On redirect examination, Susan told the prosecutor that the defendant "did something that hurt."

The DSS investigator, assigned to investigate a report of sexual abuse, testified that she went to the home on March 22, 1989, and spoke with Clyde. Two days later, the investigator returned to interview Susan about the defendant. Susan told the investigator that the defendant "pee'd on me," and that the defendant pulled down her underwear and "pee'd white" on her genitals. She further testified that Susan, using two anatomically correct dolls to show what the defendant did, inserted the male penis into the female vagina. The investigator also said that Susan told her that, on more than one occasion, the defendant "pee'd white on me and Michael, too." The detective's testimony was similar; he

[1]According to the evidence, the defendant lived with the family from September, 1988, until March, 1989, and Clyde Snow lived with them "off and on" for longer periods of time.

testified that Susan said the defendant "pee'd on me" and the defendant "pee's white on me." He also testified that Susan, using anatomically correct dolls, placed the male penis on the female doll.

After the interview, the investigator referred the children to Susan's pediatrician for a medical exam. The doctor testified that at the last of three examinations of Susan, he saw indications of "chronic" vaginal penetration which were consistent with "penile penetration."[2]

In the prosecutor's closing argument, he stated that Susan had not been questioned about the defendant at the first interview with the DSS investigator. He also gave a definition of "beyond a reasonable doubt."[3] After the prosecutor's closing, defense counsel moved for a mistrial, objecting to the prosecutor's "patently untrue . . . representation that [Susan] was not questioned about [the defendant] in [the first] interview" and to the prosecutor's proffered definition of "beyond a reasonable doubt." The judge denied the motion.

We turn first to the issue of the admissibility of the fresh complaint testimony. An exception to the general rule that a witness' testimony may not be corroborated by proof of his having said the same thing at an earlier time applies in the case of a victim of sexual assault such as rape. The victim's statement to another will be admissible if it is "fresh," that

---

[2]The doctor testified that he had talked with the DSS investigator prior to examining Susan, and that they had agreed that he did not need to interview Susan about the alleged abuse by the defendant.

[3]The prosecutor's statements regarding the burden of proof were as follows: "It's a very high standard but it's the standard the Commonwealth readily accepts. It's not an impossible standard for you to deal with as jurors. It's a standard that's in front of jurors such as yourselves every day of the week, every day of the year in the Commonwealth and throughout the country.

"It is not proof beyond all doubt. It's not proof to a certainty, like two plus two equals four, but proof beyond a reasonable doubt that you're convinced to a moral certainty that you can go home with a clear conscience as to the directness [*sic*] of your decision. When you enter deliberations I submit to you there are a [*sic*] certain total truths about what you said, if you're sworn to duty, you're going to find. There is always room for doubt. Some doubt is a possible doubt, an imaginary doubt. There is always room for doubt, but the question is is there a reasonable doubt?"

is, if there is no unreasonable delay in making it. *Commonwealth* v. *Dion*, ante 406, 413 (1991); Liacos, Massachusetts Evidence 171 (5th ed. 1981). Fresh complaint evidence is admitted only to corroborate the victim's testimony at trial. See *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898); *Commonwealth* v. *Izzo*, 359 Mass. 39, 42-44 (1971). Fresh complaint witnesses may testify to "details" where the testimony contains "no new information" and is "merely a short summary of the testimony the victim herself gave about the criminal events." *Commonwealth* v. *Bailey*, 370 Mass. 388, 393 (1976). See also *Commonwealth* v. *Kirouac*, 405 Mass. 557, 564 (1989). That is, the person to whom the victim complained may testify as to the entire complaint, not merely to the fact that the complaint was made. *Bailey*, *supra*. Compare *Commonwealth* v. *LeFave*, 407 Mass. 927, 940-941 (1990). Witnesses may not testify to details which add substantively to the complainant's account, see *Kirouac*, *supra* at 565, and details which are so graphic, colorful or gruesome as to have an important effect on the jury may be excluded. *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976). *Commonwealth* v. *Adams*, 23 Mass. App. Ct. 534, 536 (1987).

Here, Susan testified that the defendant had penetrated her. That testimony, if believed, would support a charge of sexual intercourse or unnatural sexual intercourse and abuse of a child under sixteen. She did not testify, as stated by the investigator, that he had ejaculated on her. However, whether or not ejaculation occurred would not add substantively to Susan's account, nor would it add anything essential to the proof of the crime. Moreover, it did not contain graphic, colorful, or gruesome prejudicial details. Indeed, "[t]he entire case necessarily included details which would be distasteful to people of ordinary sensibilities; that ejaculation might occur in the course of the acts the child testified to is neither surprising nor, by itself, sensational." *Adams*, *supra* at 537. See *Blow*, *supra* at 404. We conclude that there was no error in admitting the fresh complaint testimony as to Susan.

As to the issue of fresh complaint testimony concerning Michael, we reach a different result. The testimony of the DSS investigator and the detective was not fresh complaint testimony as to him. There is no evidence that Michael made any complaint which the DSS investigator could corroborate. It was error to admit the investigator's testimony as fresh complaint testimony pertaining to Michael. Because the defense did not object at trial to the fresh complaint testimony on the ground that it exceeded the complainant's testimony, and is, thus, raising the argument for the first time on appeal, our standard of review is whether there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981); *Commonwealth* v. *Mahdi*, 388 Mass. 679, 690 (1983). In light of Susan's direct testimony of her personal observations of the sexual acts performed between Michael and the defendant, we think there is little such risk.

We turn next to the question whether there was prejudicial error in the prosecutor's final argument, which the Commonwealth concedes contained misstatements of the facts and the law.[4] To determine whether an improper remark is prejudicial, we must look at the prosecutor's entire argument, the evidence at trial, and the judge's instructions to the jury. See, e.g., *Commonwealth* v. *Fitzgerald*, 376 Mass 402, 416 (1978); *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

The prosecutor should not have attempted an explanation of reasonable doubt.[5] That function is within the exclusive province of the judge. Here, however, the judge gave a full and proper definition of "reasonable doubt," following faithfully the language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). That was the last word the jury heard on the subject and cured any misimpression the prosecutor's misstatements might have caused.

---

[4] We note that the defendant made no request for curative instructions, nor did he suggest to the court how to resolve his concerns.

[5] See note 3, *supra*.

There was no prejudice from the prosecutor's misstatements of fact about the questioning of Susan at the first interview with the DSS investigator. While the judge could have directly addressed the prosecutor's closing remarks in his jury instructions, see *Commonwealth* v. *Barton*, 17 Mass. App. Ct. 961, 962 (1983); *Commonwealth* v. *Thomas*, 401 Mass. 109, 113-114 (1987), the judge made a particular point of instructing the jury that their recollections of the evidence were to control in their deliberation, and that closing arguments were not evidence. See *Barton, supra; Commonwealth* v. *Kozec, supra* at 522-523 & n.15. Further, the misstatements were not persistent, flagrant, or repetitious. Compare *Commonwealth* v. *Clary*, 388 Mass. 583, 590-591 (1983).

*Judgments affirmed.*