**Charles E. BATTLE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CF–64.**

District of Columbia Court of Appeals.

Argued May 11, 1993.

Decided Aug. 30, 1993.

---

Carol Garfiel Freeman, Glen Echo, MD, appointed by this court, for appellant.

Chrisellen R. Kolb, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Patricia A. Riley and Julieanne Himelstein, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and KING, Associate Judges.

ROGERS, Chief Judge:

This appeal requires the court to decide whether the report of rape rule survives abolition of the corroboration requirement in sex crime prosecutions. Appellant, Charles E. Battle, appeals from his convictions by a jury of sodomy and taking indecent liberties with a minor, D.C.Code §§ 22–3502, –3501(a) (Repl.1989), on two grounds: he contends that the trial judge erred in admitting testimony by the complainant's aunt and a police officer concerning the complainant's out-of-court statements, and in denying a mistrial after the aunt and the officer allegedly referred to appellant's previous sexual assaults on the complainant. We hold that the evidence that the complainant reported the sexual assault to her aunt and the officer was admissible under the report of rape rule, which we conclude continues to exist notwithstanding abolition of the corroboration requirement in sex crime prosecutions. We also hold that the absence of a limiting instruction was, under the circumstances, harmless error. Accordingly, because we further conclude that the trial judge did not abuse his discretion in denying a mistrial in connection with the admission of alleged other crimes evidence, we affirm.

**I.**

At the time of the assaults, appellant had been dating the complainant's mother for approximately two years. On the night at issue the complainant, age fourteen, had gone with her family and appellant to see the movie "Home Alone."[1] Thereafter, she fell asleep on the couch in her mother's living room while her siblings slept on a bed beside the couch. The complainant testified that sometime later appellant entered the living room, shook her until she woke up, and then stood over her and put his hand around her throat. According to the complainant, appellant put his hand on her breasts and under her panties, and told her to suck his penis. Appellant put his penis into her mouth. The complainant testified that she did what he told her to do because she was frightened. She saw something come out of his penis and fall onto the floor; appellant wiped it up with his housecoat. The complainant also testified that appellant told her not to tell anyone about what had happened and that

---

1. The complainant thought the assault occurred on December 26, 1990, but she remembered the day because it was the date on which she and her family went to see "Home Alone" with appellant. The defense and prosecution stipulated that the movie "Home Alone" was being shown in Georgetown, the location where the complainant said her family saw the film, from November 16, 1990 to March 14, 1991.

appellant said that "if I tell anybody he was going to beat me worser [sic]." The complainant testified that this scared her. In court, she demonstrated the sexual assault using boy and girl dolls.

Approximately six weeks later, the complainant told her aunt about the sexual assault. The complainant explained that she spoke with her aunt (who was married to her mother's brother) because she was spending the day at her aunt's house and thought that appellant could not go there and hit her. At trial the aunt testified that this was the first time that she had seen the complainant alone since Christmastime, and that she had found the complainant crying in the children's bedroom. The aunt described the complainant as "real upset," and testified that the complainant would not stop crying and kept saying that no one understood what she was going through. The aunt told the complainant that she could talk to her aunt, and the complainant eventually told the aunt that appellant was making her have sex with him. The aunt persisted, asking the complainant what had happened, and the complainant described the sexual assault. Defense counsel's motion for a mistrial was denied. The aunt continued to relate the complainant's statements about what appellant had done to her on the night in question.

Officer Calvin Branch, who met the complainant on February 9, 1991, testified that the complainant told him that appellant "had fondled her and then slapped her." When asked what else the complainant had said about the December 1990 incident, the officer testified that the complainant had told him that "there were a few more times but—." Defense counsel renewed his motion for a mistrial, which was denied, and the officer proceeded to summarize the complainant's description of the sexual assault.

The defense was alibi. Appellant's mother and sister testified that they were with appellant from approximately 7 p.m. to 11:15 p.m. on December 26, 1990.

## II.

■ In responding to appellant's contention that the trial judge erred in allowing the aunt and the police officer to testify about statements that the complainant made six weeks after the alleged offense, the government maintains that the testimony was admissible on four grounds: to show how the incident came to the attention of the police, as prior identification evidence, as an excited utterance, and under the report of rape rule. Only one ground requires extended discussion.[2]

### A.

■ *Law Enforcement Background.* The trial judge ruled that the evidence was admissible to show how the incident came to the attention of the police, and not for the truth of the allegations against appellant. *See, e.g., United States v. Lazcano,* 881 F.2d 402, 407 (7th Cir.1989) ("[A]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken") (quoting *United States v. Love,* 767 F.2d 1052, 1063 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986)). While some of the cases cited by the government state broadly that evidence used to show the origin of an investigation is not hearsay, these cases concern evidence used to explain government investigative activity or preparations for arrest, such as a government agent's presence at a site or government surveil-

---

**2.** The government's contention that the hearsay testimony was admissible as an excited utterance is foreclosed by *Fitzgerald v. United States,* 443 A.2d 1295, 1304 (D.C.1982) (en banc). The complainant in the instant case had sufficient time, given her age, to reflect on the assault. *Id.* The fact that she was crying and distraught six weeks later when she told her aunt about the

assault is insufficient, standing alone, to make the declaration admissible under the excited utterance exception. *See Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977). Compare *United States v. Napier,* 518 F.2d 316, 317–318 (9th Cir.), *cert. denied,* 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975); *People v. Lovett,* 85 Mich.App. 534, 272 N.W.2d 126, 130 (1978).

lance of defendants or other individuals.[3] There was no such government activity to be explained in the instant case. In fact, defense counsel and the prosecutor agreed that they would not mention the circumstances under which the officer met the complainant at the complainant's residence.

No case cited by the government, or found by the court, concerned testimony which repeated a victim's report of the crime charged. Most of the cited cases did not involve testimony that repeated declarants' descriptions of the defendants' commission of the crime charged, but instead involved descriptions of the defendants' activities before the crime, or the defendants' plans to commit the crime. Some cases condition the admission of the evidence on the fact that the declarant did not specifically identify the defendant as the wrongdoer. *See, e.g., United States v. Gomez,* 529 F.2d 412, 416–17 (5th Cir.1976) (informant's statement, repeated in officer's testimony, "pointed directly to the suspects involved" and should not have been admitted, but not reversible error) (citations omitted). The trial judge stated that the testimony was "relevant on the subject of how we got from December 26th to ... [the trial], when on December 26th the complainant was too afraid to tell anyone." However, a mere gap in time between the occurrence of the crime and police knowledge of the crime is insufficient to make the evidence admissible under an origin-of-police-investigation rationale.

### B.

■ *Prior Identification Testimony.* Evidence that the complainant had stated that appellant was the person who sexually assaulted her was admissible under the prior identification or prior description exception to the hearsay rule. *See Warren v. United States,* 436 A.2d 821, 837 (D.C. 1981) (victims' suppression hearing testimony and police testimony recounting victims' statements were admissible under prior description testimony exception to hearsay rule insofar as they consisted "solely of descriptions or identifications of the complaining witness' assailants") (citing *Morris v. United States* 398 A.2d 333 (D.C.1978)); *see also Yelverton v. United States,* 606 A.2d 181, 184 & n. 8 (D.C.1992) (citing *Clemons v. United States,* 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969)); *Sherrod v. United States,* 478 A.2d 644, 660 (D.C.1984); *Harley v. United States,* 471 A.2d 1013, 1015 (D.C.1984) (citations omitted); *Rice v. United States,* 437 A.2d 582, 582–83 (D.C.1981); *Wilkerson v. United States,* 427 A.2d 923, 927 n. 3, 924 n. 1 (D.C.) (declarant available for cross-examination), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981); *Morris, supra,* 398 A.2d at 336–37. But, testimony recounting details of the complainant's descriptions of the offense would not be admissible under the prior identification exception. *See Sherrod, supra,* 478 A.2d at 660–61.

### C.

■ *Report of rape rule.* Prior consistent statements are generally inadmissible to support one's own unimpeached witness,

---

3. *See United States v. Vizcarra–Porras,* 889 F.2d 1435, 1439–40 (5th Cir.1989) (officer testified that informer told him that the defendant wanted to sell heroin, any error harmless, judge repeatedly gave limiting instructions), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990); *United States v. Scott,* 678 F.2d 606, 612 (5th Cir.) (conspiracy to import and possess marijuana with intent to distribute, evidence of overheard radio transmissions to explain why the coast guard undertook investigation, any error in admitting somewhat ambiguous transmissions was harmless), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982); *Love, supra,* 767 F.2d at 1063–64 (drug prosecutions, testimony offered only to explain why agents made preparations in anticipation of arrests); *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987) (testimony that informant said two co-defendants were passing counterfeit money not hearsay where offered for limited purpose of explaining why a government investigation was undertaken); *cf. United States v. Hunt,* 749 F.2d 1078, 1083–84 (4th Cir.1984) (conspiracy charges, testimony admissible to rebut defendant's attack on government's reason for undercover investigation; court noted that in absence of attack on government's good faith basis for investigation evidence would not have been inadmissible), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

because mere repetition does not imply veracity. *Rease v. United States*, 403 A.2d 322, 327 (D.C.1979); *see also Scott v. United States*, 412 A.2d 364, 373 (D.C.1980). Rather, "such statements are admitted for rehabilitation purposes only in those 'exceptional situations' in which they can be of very clear help to the factfinder in determining whether the witness is truthful." *Rease, supra*, 403 A.2d at 327 (citation omitted). In *Scott, supra*, the court recognized two exceptions for the admissibility of such statements: as spontaneous utterances and in "exceptional circumstances" to rehabilitate where there is a charge of recent fabrication or a witness is impeached with "a portion of a statement which also contains relevant information that could be used to meet the force of the impeachment." [4] 412 A.2d at 372–73 (quoting *Rease, supra*, 403 A.2d at 328 n. 17). *See also Warren, supra*, 436 A.2d at 836–37. Furthermore, "the proposed [rehabilitative] evidence must be directed only at the particular impeachment that occurred.... [and] may not be used in an attempt to support a witness' credibility generally...." *Rease, supra*, 403 A.2d at 328 (citation omitted).

■ Historically, however, the law has treated sex crimes somewhat differently from other crimes. Corroboration has been required as an element of the government's burden of proof,[5] and the law has permitted some prior consistent statements to be admitted in the absence of actual impeachment of the complainant at trial. As ex-

plained by Dean Wigmore, the admissibility of a complainant's prior consistent statements about a sexual assault appears most often to have been based on three theories: (1) implied impeachment: to explain an apparent inconsistency arising from the woman's failure, at the time of the alleged rape, to tell someone of the crime when society perceives that it would have been natural for her to do so; only the fact of the complaint is admissible; 4 WIGMORE, EVIDENCE, §§ 1135, 1136, at 298–300, 307 (Chadbourn Rev.1972)[6] (referred to in this jurisdiction as the report of rape or complaint of rape rule); (2) actual impeachment: to rehabilitate the complainant by a consistent statement, thereby testing or verifying the complainant's recollection; to show consistency the details of the statement reporting the crime are admissible into evidence, *id.* §§ 1137–38, at 311; and (3) spontaneous or *res gestae* declarations, *id.* § 1139, at 313. The first rationale described by Wigmore is unique to sexual offense cases, while the latter two rationales are not. The spontaneous utterance exception does not apply in the instant case. *See supra* note 2. Nor does the actual impeachment rule apply here because defense counsel did not explicitly impeach the complainant through testimony or documentary evidence. Under the report of rape rule, testimony that the complainant reported that she was the victim of a sexual assault was admissible "not for the truth of the matter asserted, but mere-

---

**4.** The court has also recognized a third exception for prior description testimony, that allows the admission of testimony about the declarant's description of the perpetrator, but not the declarant's description of the crime. *See Warren, supra*, 436 A.2d at 837; *Sherrod, supra*, 478 A.2d at 660–61.

**5.** The rationales for corroboration, however, "reveal[ ] a tangled web of legitimate concerns, out-dated beliefs, and deep-seated prejudices." *See United States v. Wiley*, 160 U.S.App.D.C. 281, 286, 492 F.2d 547, 552 (1973) (Bazelon, C.J., concurring). Chief Judge Bazelon identified five rationales for the corroboration requirement: (1) the concern that false charges of rape are more prevalent than false charges of other crimes, (2) the difficulty of defending against a charge of rape, (3) the prevalence of severe

penalties for rape, (4) American racism, and (5) discrimination against women. *Id.* at 287–89, 492 F.2d at 553–55.

**6.** McCORMICK ON EVIDENCE similarly states that:

> In rape cases, out-of-court statements that the victim made a complaint were historically admissible to corroborate the assault.... In its origin, the theory of admissibility was to rebut any inference that, because the victim did not immediately complain, no crime had in fact occurred. Accordingly, if the victim did not testify, evidence of the complaint was not admissible, and only the fact that a complaint was made could be admitted.

2 McCORMICK ON EVIDENCE, § 272.1, at 223 (William Strong, ed., 4th ed. 1992) (footnotes omitted). *See also id.* at § 47, at 180.

ly for the fact that the statement was made." *Fitzgerald, supra* note 2, 443 A.2d at 1304.

Appellant contends, however, that abolition of the corroboration requirement also eliminated the report of rape rule.[7] The court has yet to decide this question. *See Barrera v. United States*, 599 A.2d 1119, 1135–36 (D.C.1991). We examine the rationales underlying the report of rape rule and the reasons for the elimination of the corroboration requirement, as expressed in our case law and legislative history. We also review state cases concluding that rape complaint rules exist for reasons other than meeting a corroboration requirement, and cases holding that elimination of state corroboration requirements did not eliminate rape complaint rules. Based on this review, we conclude that abolition of the corroboration requirement in sexual assault prosecutions does not preclude the government from introducing evidence to corroborate the complainant's testimony under the report of rape rule either to explain an apparent inconsistency arising from the absence of evidence of a report or to rebut implied impeachment suggesting recent fabrication. *See* WIGMORE, *supra*, § 1135, at 298–300.

The rationale for the report of rape rule extends beyond the need to meet the corroboration requirement. There are several, somewhat overlapping, rationales for the rule. First, evidence of a complaint of rape negates jurors' assumptions that if there is no evidence of a complaint, no complaint was made. *See Fitzgerald, supra*, 443 A.2d at 1305 (quoting WIGMORE, EVIDENCE, § 1135, at 298–99); *People v. Burton*, 55 Cal.2d 328, 11 Cal.Rptr. 65, 75–76, 359 P.2d 433, 443–44 (1961) (en banc); *see also State v. Calor*, 585 A.2d 1385, 1387 (Me.1991); *State v. Twyford*, 85 S.D. 522, 186 N.W.2d 545, 548 (1971) (citation omitted). Second, such evidence negates prejudices held by some jurors by showing that the victim

behaved as society traditionally has expected sexual assault victims to act, i.e., by promptly telling someone of the crime. *See State v. Murley*, 35 Wash.2d 233, 212 P.2d 801, 804 (1949) (noting exception to exclusionary rules because of inference against credibility of complaining witness that "stems from feudal doctrine of hue and cry," based on view that a woman "naturally complains promptly of offensive sex liberties upon her person," so that if no complaint shown, "it is more likely that ... her present charge is fabricated"; "[m]odernly the inference affects the woman's credibility, generally, and the truth of her present complaint, specifically"); *see also State v. Hill*, 121 N.J. 150, 578 A.2d 370, 376–77 (1990); *Lyles v. United States*, 20 App.D.C. 559, 563 (1902) (complaint of rape "is admitted as a test applicable to the accuracy as well as the veracity of the witness"); *State v. Pollitt*, 205 Conn. 61, 530 A.2d 155, 163–64 (1987). Third, such evidence rebuts an implied charge of recent fabrication, which springs from some jurors' assumptions that sexual offense victims are generally lying and that the victim's failure to report the crime promptly is inconsistent with the victim's current statement that the assault occurred. *See Fitzgerald, supra* note 2, 443 A.2d at 1305; *State v. Tirone*, 64 N.J. 222, 314 A.2d 601, 604 (1974); *State v. Pollitt, supra*, 530 A.2d at 163; *Commonwealth v. Freeman*, 295 Pa.Super. 467, 441 A.2d 1327, 1332 (1982); *People v. Lawler*, 142 Ill.2d 548, 154 Ill.Dec. 674, 680, 568 N.E.2d 895, 901 (1991) (citation omitted); *cf. State v. Brice*, 186 Conn. 449, 442 A.2d 906, 908, 910 n. 10 (1982) (no corroboration required, admissible to show constancy in complainant's declarations). Lastly, a report of rape was one way to meet the corroboration requirement in this jurisdiction. *See Fitzgerald, supra* note 2, 443 A.2d at 1301–02.

---

7. The requirement that the government offer corroboration of a sexual offense victim's testimony has been abolished. *See* D.C.Code § 23–114 (Repl.1989) (no corroboration required·of a child's testimony in criminal prosecutions); *Gary v. United States*, 499 A.2d 815, 833–34 & n. 22 (D.C.1985) (en banc), *cert. denied*, 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725, 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986) (eliminating requirement for child victims); *Arnold v. United States*, 358 A.2d 335, 344 (D.C.1976) (en banc) (eliminating corroboration requirement for "mature female" victims).

Only the last rationale was removed by the elimination of the corroboration requirement from the government's burden of proof. The first three rationales remain.[8] Thus, numerous jurisdictions have a rape complaint rule in the absence of a corroboration requirement, basing the rule on rationales other than a legal requirement for corroboration. *See, e.g., People v. Burton, supra,* 11 Cal.Rptr. at 75–76, 359 P.2d at 443–44 (in sexual offense case where victim testifies, "the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur"; no mention of corroboration requirement); *People v. Lawler, supra,* 154 Ill.Dec. at 680, 568 N.E.2d at 901 ("prompt complaint of a rape" exception admits complaint because failure to complain seen as indicating that no crime occurred, no mention of corroboration requirement); *State v. Calor, supra,* 585 A.2d at 1387; *Commonwealth v. Snow,* 30 Mass.App.Ct. 443, 569 N.E.2d 838, 840 (1991); *State v. Lewis,* 803 S.W.2d 260, 263 (Tenn.Crim.App.1990) (admissible as "corroboration of the declarant's testimony, a comment upon the victim's credibility"; no mention of corroboration requirement); *see also Simpkins v. State,* 303 S.C. 364, 401 S.E.2d 142, 143 (1991). *See generally* WIGMORE, EVIDENCE, § 1135, at 298–303 (citing cases allowing evidence of complaint of rape); WALTER A. REISER, JR., 1993 SUPPLEMENT TO WIGMORE ON EVIDENCE, § 1135, at 399–400 (1993) (same).

In *Fitzgerald, supra* note 2, 443 A.2d at 1303, the court did state that the complaint of rape "theory is premised on the *necessity* for admitting the fact of complaint in sex crimes, because of the unique requirement that the sex crime be corroborated." However, the court referred broadly to "the unique requirement that the sex crime be corroborated" even though the corroboration requirement had been eliminated years before for mature victims. *Id.* at 1303; *see also id.* at 1304–05. This, perhaps, suggests that the court may have been referring to a *de facto* necessity for corroboration as well as a *de jure* requirement and acknowledging that the former would outlast the latter. In any event, the court explained that "[t]he corroboration requirement in sex crimes is analogous to the government having the burden of refuting an implied charge of recent fabrication." *Id.* at 1305. In its explanation, the court relied on Dean Wigmore's statement that:

> where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue upon that assumption. As a particularity, therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was *not silent,* i.e., that a *complaint was in fact made.*

*Id.* (quoting WIGMORE, EVIDENCE, § 1135, at 298–99).[9] In other words, the court acknowledged other rationales for the report of rape rule in addition to fulfillment of the corroboration requirement. The court recognized that juries have a tendency to doubt the victim's claim of sexual assault, and that the report of rape rule was created partly to counteract these tendencies.

In addition, the *Fitzgerald* court's holding concerning the report of rape rule relied on cases from other jurisdictions that

---

**8.** *Cf. Scott, supra,* 412 A.2d at 372 ("[t]here is nothing ... that waives the rules of evidence as to corroborating evidence," implying that evidence needed some independent basis for admissibility beyond merely satisfying corroboration requirement).

**9.** In explaining his analysis, Dean Wigmore prefaced these remarks with a statement that: the circumstance that at the time of the alleged rape the woman said nothing about it to anybody constitutes in effect a self-contra-

diction.... That she did not [report the crime] was in effect an assertion that nothing violent had been done. WIGMORE, EVIDENCE, § 1135, at 298. Without condoning or agreeing with the faulty assumption expressed by Dean Wigmore, *see* WIGMORE, EVIDENCE, § 1135(1)(a), at 298, that a victim's failure promptly to report a sexual offense is inconsistent behavior on her part, we cannot ignore that these assumptions exist. *See, e.g., State v. Hill, supra,* 578 A.2d at 377–78, 380.

did not have a corroboration requirement.[10] *Fitzgerald, supra* note 2, 443 A.2d at 1304. This showed again that the court recognized that the rule has other purposes besides merely facilitating the fulfillment of the corroboration requirement. Subsequently, in *Barrera, supra,* the court recognized that the survival of the report of rape rule was not settled by *Fitzgerald. Barrera, supra,* 599 A.2d at 1135–36.

The court's reasons for eliminating the corroboration requirement do not suggest that the report of rape rule should be retired. Rather, abolition of the corroboration requirement was partially motivated by that rule's inherent unfairness to the complainant. Thus, in *Arnold, supra* note 7, 358 A.2d at 344, which eliminated the requirement for mature victims, the court "reject[ed] ... the notion ... that the victim of rape and other sex-related offenses is so presumptively lacking in credence that corroboration of her testimony is required to withstand a motion for a judgment of acquittal." This language suggests a move toward equality of treatment of the sexes, stemming from recognition that a woman's complaint is not inherently suspect and that it should be taken no less seriously than a man's complaint. *See also Wiley, supra* note 5, 160 U.S.App.D.C. at 289, 492 F.2d at 555. As the en banc court later stated in *Gary, supra* note 7, 499 A.2d at 833, "[t]here is no reason to distinguish between a mature female and a mature male sex offense victim." In other words, the court was concerned about the unfairness that would defeat a prosecution for lack of corroboration. *See Arnold, supra* note 7, 358 A.2d at 344 (corroboration requirement had "demeaning implications"); *id.* at 348–49 (Mack, J., concurring in part and dissenting in part). The *Arnold* court also concluded that the corroboration requirement, which arose in the seventeenth century when defendants had few protections and no right to counsel, now "serves no legitimate purpose" because there are "adequa[te] ... constitutional protections available to every defendant in a sex case." *Id.* at 343. *See Gary, supra* note 7, 499 A.2d at 833; *see also Arnold, supra* note 7, 358 A.2d at 348–52 (Mack, J., concurring in part, dissenting in part). None of these reasons conflicts with the court's later acknowledgment of the concern, expressed by Dean Wigmore, that jurors would assume that if a prompt complaint had not been made the sexual assault must not have occurred.[11] *See Fitzgerald, supra* note 2, 443 A.2d at 1305.

We have found nothing, moreover, to indicate that the Council of the District of Columbia sought to abolish the report of rape rule when the Council eliminated the corroboration requirement for child victims. The Council did not address the report of rape rule even though it was presumptively aware of this rule, which was discussed in the en banc decision in *Fitzgerald, supra,* an opinion which affirmed the then-existing corroboration requirement for child victims.[12] *See Fitzgerald,*

10. *See State v. Balles,* 47 N.J. 331, 221 A.2d 1, 5 (1966) (citing 4 WIGMORE, EVIDENCE, *supra*), *cert. denied,* 388 U.S. 461, 87 S.Ct. 2120, 18 L.Ed.2d 1321 (1967); *State v. Thomas,* 52 Wash.2d 255, 324 P.2d 821, 822–23 (1958) (corroboration not required, complaint of rape to authorities "admissible, as bearing upon [the complainant's] credibility"); *Irvin v. State,* 66 So.2d 288, 294 (Fla.1953) (en banc) (no mention of a corroboration requirement, admissible to rebut "any inference of consent that might have been drawn from silence"); *cert. denied,* 346 U.S. 927, 74 S.Ct. 316, 98 L.Ed. 419 (1954).

11. Although *Arnold, supra* note 7, quotes at length from a California case to the effect that a charge of a sex offense is no easier to make or harder to defend against than charges of other crimes, 358 A.2d at 342–43, the quotation appears in the context of the court's consideration of whether an ancient rule requiring corroboration could withstand scrutiny now that a defendant had basic rights such as a right to counsel. *See id.* The *Arnold* court did not address Professor Wigmore's modern concern. *See* WIGMORE, EVIDENCE, § 1135, at 298–99; *Arnold, supra* note 7, 358 A.2d at 343 (observing that "a rule of law requiring corroboration has probably little actual influence upon the jurors' minds over and above the ordinary caution and suspicion which would naturally suggest itself for such charges") (quoting 7 WIGMORE, EVIDENCE, § 2061, at 354 (3d ed. 1940)).

12. *See (James) Smith v. United States,* 597 A.2d 377, 382 n. 11 (D.C.1991) (Council is presumed to act with knowledge of existing case law); *cf. Office of People's Counsel v. Public Service Comm'n,* 477 A.2d 1079, 1091 (D.C.1984).

*supra* note 2, 443 A.2d at 1298–99, 1303–05; *see also State v. Dabkowski,* 199 Conn. 193, 506 A.2d 118, 122, 123 (1986).

The report of rape rule is consistent with the D.C. Council's purpose in removing the corroboration requirement. In abolishing the corroboration requirement for child victims of sexual offenses, the Council recognized that sexual offense victims do not always complain immediately, but may remain silent for a variety of reasons, including the emotional and psychological effects of such offenses and fear of others' reactions. *See* REPORT OF THE D.C. COUNCIL COMMITTEE ON THE JUDICIARY ON BILL 5–426, THE "CHILD ABUSE REFORM ACT OF 1984," June 25, 1984, at 2 ("victims are often threatened, bribed, or fooled into thinking they will meet with disfavor if they disclose the abuse, therefore these crimes may go undetected for long periods of time"). One purpose of the report of rape rule is to effectuate this understanding that a victim's failure to report a sexual offense is not unnatural or inconsistent behavior, by preventing complainants and the government from being penalized by contrary assumptions. In addition, to the extent that the report of rape rule attempts to neutralize jurors' unfounded assumptions so that cases can be tried on the merits, it is consistent with the Council's expectation that removal of the corroboration requirement would allow "more cases [to be] tried on the merits." *Id.* at 5.

Finally, the Council indicated its understanding that the corroboration requirement prevents the jury from hearing and assessing the complainant's testimony when there is no corroborative evidence, that corroborative evidence was often difficult to obtain, that only one other jurisdiction retained a corroboration requirement, and that the corroboration requirement was based on the false premise that children fabricate stories about sexual offenses. *Id.* at 2. Nothing suggests that the Council's concerns with the corroboration requirement called into question the rationale behind the report of rape rule. Moreover, the Council was presumptively aware that the court itself recognized that

corroborative evidence remained, in reality, of importance in the successful prosecution of sexual assault cases. *See Arnold, supra* note 7, 358 A.2d at 344 ("[w]hile we abrogate the [instructional] requirement [regarding corroboration] ... we caution that crucial in the trial of any such case is the issue of credibility"); *see also Warren, supra,* 436 A.2d at 837 (certain testimony concerning the out-of-court statements of adult victims "is admissible under the 'complaint of rape' theory, not for the truth of the matter asserted, but merely for the fact that the statement was made"; after corroboration requirement eliminated for mature victims) (dictum).

A number of state courts have concluded that report of rape rules continue to survive after the legal requirement for corroboration is eliminated. These courts have held that the complaint of rape is appropriately admitted to rebut an implied charge of recent fabrication or an assumption that if a sexual offense victim did not behave as jurors expect rape victims to behave (by promptly telling someone else about the sexual assault), the victim must be lying about the occurrence of the offense. Thus, in *Commonwealth v. Freeman, supra,* 441 A.2d at 1331, the Pennsylvania Superior Court held that even though such corroborative evidence is no longer required, evidence of a complaint of rape is admissible to show that a complaint was made and "to identify the occurrence complained of with the offense charged." The court stated that "in the special circumstances of a rape case the testimony of a woman that she was raped is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part." *Id.,* 441 A.2d at 1332. The court did not view the evidence as hearsay because it was offered as corroborative rather than substantive evidence. *Id.*

Similarly, in *State v. Pollitt, supra,* 530 A.2d at 163–64, holding that evidence of a complaint of rape is admissible even though corroboration is no longer required, the Connecticut Supreme Court stated that complaints of sexual offenses are analyzed

as "prior consistent statements admissible to rebut a suggestion of recent fabrication," and, furthermore, that a court may presume that a victim of sexual assault has been "impeached by a suggestion of recent contrivance." *Id.*, 530 A.2d at 163 (citation omitted). Likewise, in *State v. Hill, supra,* 578 A.2d at 371, 374–776, 378, the New Jersey Supreme Court concluded that although its "hue and cry" requirement had been eliminated, the fresh complaint rule (New Jersey's equivalent of the rape complaint rule) remains necessary because, regrettably, juries presume that a "normal" victim would make a complaint and might draw an adverse inference if no evidence of such complaint were presented. Observing that the fresh complaint rule has a "misguided history" and originated in "sexist notions of how the 'normal' woman responds to rape," the court nevertheless concluded that "women victims are better served by the continuance of the [rule] than by its elimination. The present rule as designed neutralizes jurors' negative inferences concerning the woman's silence after having been raped." *Id.*, 578 A.2d at 380. The court thus retained its permissive "fresh-complaint" rule under the rationale that evidence of a victim's prompt complaint rebuts the jury's probable inference that victims who do not promptly complain are lying about the offense. *See id.*, 578 A.2d at 376, 371, 374–777; *State v. Tirone, supra,* 314 A.2d at 604 (the purpose of the fresh complaint rule was "to meet in advance a charge of recent fabrication"), quoted in *Fitzgerald, supra* note 2, 443 A.2d at 1303.[13]

We conclude, upon reviewing these authorities, that while the legal requirement for corroboration has been abolished, the other three rationales for the report of rape rule clearly survive. Modern courts have recognized that society, and jurors, often erroneously believe that the only normal behavior of a sexual offense victim is to report the offense almost immediately. *See State v. Hill, supra,* 578 A.2d at 376–77; *cf. Fitzgerald, supra* note 2, 443 A.2d at 1304–05. There is no reason to conclude that all District of Columbia jurors are free from such biases. *Cf. Arnold, supra* note 7, 358 A.2d at 349 & n. 4 (Mack, J., concurring and dissenting); *United States v. Sheppard,* 186 U.S.App.D.C. 283, 287 & nn. 15 & 16, 569 F.2d 114, 118 & nn. 15 & 16 (1977). The report of rape rule was designed to confront jurors' assumptions, such as those encouraged by defense counsel here, that if a victim did not report a sexual assault to someone else, the victim is probably lying about the occurrence of the offense.[14] Thus, as the New Jersey Supreme Court concluded, the practical necessity for such evidence exists because persistent and regrettable assumptions about the credibility of the victims of sex crimes still remain. *See State v. Hill, supra,* 578 A.2d at 376–78; *see also Fitzgerald, supra* note 2, 443 A.2d at 1299 n. 5 (noting that United States Court of Appeals for the District of Columbia Circuit had eliminated its corroboration requirement but endorsed defense arguments and jury instructions on "the dangers of falsification"; "the court ... seems to be preserving the very factors that were said to underlie its now abandoned corroboration rule") (citing *Sheppard, supra,* 186 U.S.App.D.C. 283, 569 F.2d 114).[15] This

13. *See also State v. Gardner,* 328 N.W.2d 159, 160–61 (Minn.1983) (corroboration not required, although "there may be cases in which the evidence would be insufficient absent corroboration"; rebuttal witness allowed to read formal statement given by complainant a few days after assault).

14. In the instant case, defense counsel stated in his closing argument to the jury that:

> [t]here's no prompt complaint. There's no officer going to the scene looking for semen, any kind of corroboration of that nature. There's no medical corroboration as you fre-

quently have, as you usually have, as you almost always have in rape cases because of the fact that she didn't tell anybody. *If it happened,* she didn't tell anybody for two months later. So there is no physical evidence corroborating a word she says. [Emphasis added]

In his opening argument, defense counsel told the jury that the government's case consisted of "one witness who is uncorroborated."

15. The court has also recognized possible juror prejudice against sexual offense complainants in other contexts, such as cross-examination regarding the complainant's sexual history. *See*

court, sitting en banc, made a similar acknowledgement in *Gary, supra,* 499 A.2d at 834, where the court abolished the corroboration requirement for child victims of sexual offenses, but nonetheless suggested that corroborative evidence, including evidence of prompt reports, might continue to be used, observing that "[i]f the trial judge believes that an additional instruction is needed because of unique circumstances," the judge may inform the jury during instructions that relevant factors for it to consider include "whether there was any delay ... in reporting the incident" and "evidence of facts and/or inconsistencies which support the complainant's testimony."

■ Therefore, as argued by the government at trial, the evidence of the complainant's report to her aunt and the police was properly admitted under the report of rape rule.[16] The delay of approximately six weeks between the assault and the complainant's report to her aunt did not render the report inadmissible for lack of promptness. *Fitzgerald, supra* note 2, 443 A.2d at 1305, 1301 n. 8 ("when there is an explanation for the delay in the child's fear of reprisals, the delay should not render the complaint inadmissible"; no negative significance attached to child victim's failure to report rape to authorities, which must be considered in light of defendant's threat to retaliate if she told anyone of crime). The complainant testified that appellant threatened to beat her if she told anyone what he had done to her. She reported the assault on the first occasion that she was alone with her aunt, speaking as well a few days later to the police.

■ Our case law has stated that "[o]nly the fact of the complaint should be admitted and not the details of the occurrence, since the testimony is offered to bolster the credibility of the complaint." *Fitzgerald, supra* note 2, 443 A.2d at 1305 (error to admit "substantive detailed description of the occurrence"). *See also Rease, supra,* 403 A.2d at 328. Courts in other jurisdictions have allowed various amounts of detail. *See State v. Pollitt, supra,* 530 A.2d at 163 (evidence admissible "to rebut a suggestion of recent fabrication" "not only to the fact that the complaint had been made but also to its details"); *Commonwealth v. Lagacy,* 23 Mass.App.Ct. 622, 504 N.E.2d 674, 679 & n. 8 (1987) (some details admissible); *People v. Burton, supra,* 11 Cal.Rptr. 65, 76, 359 P.2d 433, 444 (enough details to establish nature of offense and identity of offender); *State v. Twyford, supra,* 186 N.W.2d at 548 (identity of the assailant). A number of courts allow sufficient detail to identify the nature of the alleged offense and the identity or description of the alleged perpetrator.[17] Dean Wigmore would allow evidence regarding the nature of the sexual assault complained

Roundtree v. United States, 581 A.2d 315, 324 & n. 21, 325 (D.C.1990) (noting prejudice against victim of sexual offense that exists when victim is cross-examined about prior sexual conduct or previous allegations of sexual offenses); *Meaders v. United States,* 519 A.2d 1248, 1254 (D.C. 1986) ("[p]rejudice results when cross-examination probes into the private life of a rape victim"); *McLean v. United States,* 377 A.2d 74, 78–79 (D.C.1977) (evidence of sexual crime victim's sexual reputation and prior sexual acts with people other than defendant inadmissible).

16. Appellant does not claim that the aunt's testimony describing the complainant's crying and appearing upset when the report was made was inadmissible. *See Street v. United States,* 602 A.2d 141 (D.C.1992).

17. Thus, in *State v. Twyford, supra,* 186 N.W.2d 545, and *People v. Burton, supra,* 11 Cal.Rptr. 65, 359 P.2d 433, a somewhat broader rule was applied to allow testimony about the identity of the perpetrator as well as the fact of the complaint. In *Burton, supra,* the California Supreme Court stated that testimony regarding statements made by the victim of a sexual offense is admissible to show that a report was made and may include only such further details as establish the nature of the offense and the identity of the assailant. *People v. Burton, supra,* 11 Cal.Rptr. at 76, 359 P.2d at 444. In *State v. Twyford, supra,* 186 N.W.2d at 548, the court stated that in a sexual offense case, proof of the victim's complaint is admissible, but only to show the fact that a complaint was made and the identity of the assailant. *See also Commonwealth v. Freeman, supra,* 441 A.2d at 1331–32 (admissible to show that complaint was made and "to identify the occurrence complained of with the offense charged"); *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371, 374 (1979) (en banc) (same) (citation omitted).

of and the time and place it occurred,[18] WIGMORE, § 1136 comment (1), at 307, and the *Fitzgerald* court cited WIGMORE, § 1136 as explanatory authority for its statement that "[o]nly the fact of the complaint should be admitted," *Fitzgerald, supra* note 2, 443 A.2d at 1305. Consequently, in the absence of actual impeachment of the complainant through testimony or documentary evidence, we conclude that under the report of rape rule the testimony about the complainant's prior statements could properly include only enough details to show that the complainant reported the sexual assault charged. However, as noted in Part II B, *supra*, the evidence identifying appellant as the attacker was admissible as substantive evidence under the prior identification exception to the hearsay rule.

 Therefore, while the aunt and the police officer could properly provide information about the complainant's report to identify the nature of the offense, its time and place, and the perpetrator of the alleged assault, their testimony could go no further.[19] Both the aunt and police officer repeated what the complainant had told them about how appellant had sexually assaulted her. The aunt initially testified that the complainant said that appellant had forced her to have sex with him and that he had put his penis in her. The aunt then testified that the complainant had told her that "[appellant] was standing over top of her with his penis hanging out—with his penis out of his pants and was telling her to suck his penis." The aunt's testimony was admissible to show that the complainant had complained of the specific crime of sodomy, which here required proof of oral contact with another's genitals.[20] *See* D.C.Code § 22–3502(a) (Repl.1989); *Balles, supra* note 9, 221 A.2d at 5 (witness' statement that victim said defendant "had put

his hands down her panties and had touched here" did not contain improper details; witness "could hardly have said less and still identified the nature of [the] complaint"); *cf. Hall v. United States,* 400 A.2d 1063, 1064–65 (D.C.1979) (child victim's great-grandmother testified that victim reported act of oral intercourse but not anal contact or other sex acts; testimony corroborated victim's testimony).

The police officer's testimony was similarly confined. On direct examination he testified that the complainant had told him that "[appellant] had fondled her and then slapped her," and that "[appellant] had walked into her room, started to fondle her, made her—he zipped down his pants and made her suck his thing." Defense counsel cross-examined the officer about one detail of the assault: the officer testified that the complainant told him that appellant unzipped his pants before assaulting her; the complainant had testified that appellant was wearing nothing but a housecoat at the time of the assault.

 To the extent that the testimony of the aunt and the officer went beyond the bare fact that the complainant had reported that appellant had sexually assaulted her by forcing her to suck his penis, and therefore was unnecessary to identify the nature of the attack that the complainant was reporting, any details were not lengthy. Testimony that the complainant had said that appellant slapped her and stood over her with his penis "hanging out" should not have been admitted, but the errors were harmless. The additional details were very brief, the government's case was strong, and the complainant had already described the offense and testified that appellant put his hand around her throat and threatened to "beat [her] worser" if she told anyone of the crime.

18. Under the other two theories listed by Dean Wigmore, spontaneous utterance and actual impeachment, details of the complainant's report would be admissible. *See* WIGMORE, § 1138, at 311, § 1139, at 314.

19. *See Fitzgerald, supra* note 2, 443 A.2d at 1305; *State v. Twyford, supra,* 186 N.W.2d at 548–49;

*People v. Burton, supra,* 11 Cal.Rptr. at 76, 359 P.2d at 444.

20. In *Fitzgerald, supra,* it was not clear whether testimony that the victim had told the witness about "the act of cunnilingus but not the attempted intercourse" was admissible. *See Fitzgerald, supra* note 2, 443 A.2d at 1298, 1305.

Of course, in order to avoid having the jury consider the complainant's report as substantive evidence, the trial judge should instruct the jury on the limited purpose for which the evidence is admitted.[21] *See State v. Lewis, supra,* 803 S.W.2d at 263–64; *cf. Fitzgerald, supra* note 2, 443 A.2d at 1305. Thus, the jury should be told that the evidence should be considered as relevant to the fact that a complaint was made, and not for the truth of the statements contained in the complaint. *See Warren, supra,* 436 A.2d at 837 (dictum). The absence of such a limiting instruction by the trial judge assumes little significance in the instant case in view of the strength of the government's evidence against appellant. *See Barrera, supra,* 599 A.2d at 1124–25. The complainant described the nature of the assault by appellant and used dolls to demonstrate exactly what had happened. In addition, the aunt testified that the complainant had been crying and was very upset when she spoke about the sexual assault. A defense witness confirmed that appellant had gone with the complainant and her family to see the movie "Home Alone." The fact that the complainant testified and was available for cross-examination removed much of the prejudice usually caused by hearsay testimony. *See Carr v. United States,* 585 A.2d 158, 162 & n. 3 (D.C.1991). Furthermore, the prior identification of appellant was admissible as substantive evidence. *See supra* Part II B. Moreover, in closing argument defense counsel helped to mitigate the impact of repeated testimony about the offense by arguing to the jury that the "corroboration" mentioned in the prosecutor's closing argument was nothing more than the complainant "making the accusation to other people." [22]

## III.

Appellant also contends that the trial judge erred in denying a mistrial as the result of the introduction of other crimes evidence.

The complainant's aunt testified that the complainant had said that appellant had "stuck his penis in her once, and then other times he made her—." Defense counsel's objection was sustained. The aunt was then asked, "[w]hat did [the complainant] say [appellant] did to her in December?" According to the aunt, the complainant "said that December, December was the last time that he made—." Defense counsel's motion for a mistrial was denied. The trial judge granted the defense request for a curative instruction and instructed the jury, before the prosecutor resumed direct examination of the witness, that the judge was striking the aunt's testimony "to the extent that it may have referred to other occasions," and hence the jury "must not consider it" but "[i]t must be as if it never happened." The jury was told to focus only on the incident of December 26, 1990. Subsequently, however, the prosecutor asked Officer Branch whether the complainant had told him "anything else that happened in December of 1990 during the same incident?" The officer replied, "[s]he said there were a few more times, but—." Defense counsel renewed his objection; his motion for a mistrial was denied. Defense counsel declined the judge's offer to give another curative instruction and none was given. Nevertheless, we find no abuse of

---

**21.** *See* STANDARD CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Standard Instruction No. 1.11, at 32 (4th ed. 1993) (*prior consistent statements*). New Jersey has a slightly different, more direct approach. *See United States v. Bethune,* 121 N.J. 137, 578 A.2d 364, 369 (1990) ("[t]he trial court should make clear that a fresh complaint does not bolster the victim's credibility or prove the underlying truth of the sexual assault charges but merely dispels the inference that the victim was silent"). The clarity of New Jersey's approach is appealing. Further, while instructing the jury, the trial judge should take care not to suggest that there is any validity to assumptions that a victim's failure to report a sexual offense is inconsistent with occurrence of the offense.

**22.** Given our conclusion of the lack of significance of any limiting instruction here, we need not dwell on any issues relating to the effect of appellant's not requesting any such instruction or objecting to its absence. *Cf.* Super.Ct.Crim.R. 30; FED.R.EVID. 105; *see* JACK WEINSTEIN & MARGARET BENDER, WEINSTEIN ON EVIDENCE ¶ 105 [05] (Matthew Bender rev.1992).

discretion by the trial judge in denying a mistrial.[23]

There was strong evidence from which the jury could reasonably find appellant guilty. The trial judge instructed the jury during the aunt's testimony that "the only part of your testimony that you are left with is the part which deals with this incident and this incident only." *See Hinkel v. United States*, 544 A.2d 283, 286–87 (D.C. 1988); *see also Clark v. United States*, 593 A.2d 186, 193 (D.C.1991). Given the nature of the limiting instruction, it is readily apparent why defense counsel would not want it repeated during the officer's testimony. However, before the jury retired to deliberate, the judge reminded the jurors in his instructions that where an answer had been "stricken from the record,... you are to disregard both the question and the answer in your deliberations," and the judge noted that he had struck evidence on several occasions.[24] While the mental gymnastics required of the jury by such instructions are troublesome in some circumstances, *see, e.g., Clark, supra*, 593 A.2d at 193; *Thompson v. United States*, 546 A.2d 414, 425–26 (D.C.1988), we are satisfied, in view of the overwhelming evidence of appellant's guilt, that the instructions were adequate to cure the harm. *See Hinkel,*

*supra*, 544 A.2d at 286–87. The trial judge observed that the officer's testimony did not indicate that other crimes had occurred. The judge stated, "I'm not sure, frankly, without any emphasis, in light of the way this testimony is coming in, I'm not sure except for my emphasis that this is what we think it is." The judge similarly observed that the aunt's reference to "the last time" was not a "direct" reference to other crimes but only an "implication" that other sexual assaults occurred. In addition, there is no evidence that the prosecutor deliberately elicited the testimony about other crimes; quite the contrary.[25]

Accordingly, we affirm the judgment of conviction.

KING, Associate Judge, concurring:

I join the opinion of the court. I write separately only to express my view that a report of rape [1] should be admitted without limiting instruction on the ground that it is analogous to admitting, as substantive evidence, testimony relating to the identity of the perpetrator of the offense.[2] I see no difference, in terms of the reliability of the declaration, between testimony that the assailant was a certain person or possessed certain described physical features, and

---

**23.** The grant or denial of a motion for a mistrial is left to the trial judge's discretion, and such a denial will be reversed only in "extreme situations threatening a miscarriage of justice." *Rambert v. United States*, 602 A.2d 1117, 1120 (D.C.1992) (quoting *Beale v. United States*, 465 A.2d 796, 799 (D.C.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984)). In deciding whether to reverse the denial of a motion for a mistrial, this court considers "the closeness of the case, the centrality of the issue affected by the [asserted] error, and the steps taken to mitigate the effects of the error." *Id.* (quoting *Bliss v. United States*, 445 A.2d 625, 634 (D.C.1982), *opinion amended*, 452 A.2d 172 (D.C. 1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983)) (brackets by the court).

**24.** The judge also instructed the jury that "You may consider only the evidence in this case ... you must permit only the evidence in this case to enter into your deliberations and findings."

**25.** The prosecutor attempted to lead her witnesses in order to avoid testimony about other crimes, warned the police officer not to mention other crimes, and stated that the aunt, "to my recollection, has never told me that the child

ever told her about any other time [that a sexual assault occurred]." We need not reach the government's contention that the evidence would have been admissible as other crimes evidence to show the defendant's unusual sexual preference. *See Pounds v. United States*, 529 A.2d 791, 794 (D.C.1987); *cf. Johnson v. United States*, 610 A.2d 729, 730 & n. 4 (D.C.1992).

**1.** I would leave open the question of whether the admissibility of a report of a crime, whether for the purpose of showing that a complaint was made or as substantive evidence, should be limited to reports of sexual offenses. Admissibility of such reports on either theory might well be appropriate for violent crimes such as armed robbery and spousal abuse, or possibly other offenses as well.

**2.** I agree with the panel opinion's conclusion that the details of the offense provided by the witnesses in this case went beyond that which is now permitted under the prior identification exception to the hearsay rule. See *Sherrod v. United States*, 478 A.2d 644, 660–61 (D.C.1984).

testimony setting forth in brief outline the circumstances of the offense that the assailant committed. Neither is any more nor less reliable than the other, and both should be admitted as substantive evidence. I appreciate that the *en banc* court has held, as the panel opinion recognizes, that testimony regarding the circumstances of the offense may not be admitted for the truth of the declaration and that the trial judge should give a limiting instruction [3] if requested. See *Fitzgerald v. United* *States*, 443 A.2d 1295, 1305 (D.C.1982) (en banc). Perhaps that holding can be reevaluated if the issue presents itself in some future case.

3. Having given scores of limiting instructions as a trial judge, I doubt whether any instruction is more confusing and less understood than the one that informs the jury that a statement or declaration which the jury has heard may not be considered "as establishing the truth of any fact contained in that statement." CRIMINAL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA No. 1.06 at 17 (3d ed. 1978). It remains to be seen whether the formulation in the most recent edition of the criminal jury instructions will be any clearer: "you may not consider [the] ... statement as proof that what was said in the ... statement was true." CRIMINAL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA No. 1.10 at 26 (4th ed. 1993); *Id.* No. 1.11 at 32.