COMMONWEALTH *vs.* VANCE WASHINGTON.

No. 88-P-1024.

Suffolk. January 8, 1990. - February 8, 1990.

Present: BROWN, SMITH, & FINE, JJ.

*Rape. Practice, Criminal*, Fair trial, Argument by prosecutor.

At the trial of indictments charging a black male with rape, robbery, and kidnapping of a fourteen year old white female, the prosecutor's use of racial references in his questioning of the victim on matters relating to her state of mind did not, in the circumstances, deprive the defendant of a fair trial; furthermore, neither a reference by the prosecutor during closing argument that could have been interpreted as applying to the racial character of the neighborhood in which the crimes took place, nor a brief instance in which the judge may have misspoken during his charge to the jury created a substantial risk of a miscarriage of justice. [273-275] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department, two on September 12, 1985, and five on December 12, 1985.

The cases were tried before *George N. Hurd, Jr.*, J.

*Yvonne P. Toyloy*, Committee for Public Counsel Services, for the defendant.

*James M. McDonough*, Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant was convicted of forcible rape of a child under sixteen (five counts), robbery, and kidnapping. The fourteen year old victim testified that the defendant, previously unknown to her, grabbed her and threw her to the ground on a street in Dorchester as she was walking home from a friend's house. He asked her for money, which she didn't have, took her jewelry, and then took her to a nearby park, where he raped her. According to the victim's testimony, the defendant then demanded that she accompany

him to various places, acting as if she were his girlfriend and doing what he wanted her to do. The victim remained with the defendant for the next several hours, walking the streets of Dorchester and Roxbury, visiting several apartments, a cellar, and a variety store, and riding in a taxicab. Additional sex acts took place between the victim and the defendant and also, upon the defendant's order, between the victim and a friend of the defendant. Over the course of the incident, the victim saw numerous people, including females, and once she left the defendant in a fifth floor apartment and went downstairs alone to retrieve his hat. Thus, she had the opportunity to flee, seek help, or at least complain to someone about her plight. Yet she did not do so until, while being taken by the defendant and his friend to Boston's "Combat Zone," she saw an officer in a police cruiser signal to her and she ran to the cruiser and told the police officer that she had been raped.

On appeal, the defendant's principal contention is that the prosecutor made an improper appeal to racial prejudice by putting certain questions to various witnesses. The victim, who at the time of the incident weighed about 100 pounds and was five feet tall, is white. The defendant, who weighed approximately 160 pounds and was five feet seven inches tall, is black. The police officer to whom the victim first complained is white. Essentially, the sole issue at trial was whether the victim consented to the sexual acts, and her credibility was key. In his opening statement to the jury, defense counsel emphasized that from 10:00 P.M., the time of the original encounter, until 2:52 A.M., when she spoke to the police officer, although the victim had ample opportunity to do so, she did not report the rape to anyone. The victim's failure to complain was also the focus of defense counsel's cross-examination of the victim and several other Commonwealth witnesses and his questioning of the two witnesses he called for the defense.

The prosecutor questioned the victim and another witness about the race of the individuals with whom the victim had come in contact over the course of the incident, including the

defendant's friend, the taxicab driver, a security guard at the variety store, and a woman who purchased the victim's ring from the defendant. All were black. So too is the grandmother of the defendant's friend, who testified that a white girl had been in her apartment in the company of her grandson and the defendant on the night of the incident. The prosecutor also brought out through pointed questioning that the neighborhoods where most of the time was spent were predominantly black. In response to questions from the prosecutor, the victim stated that she was frightened throughout the encounter and that the reason she failed to make a prompt complaint was that she was afraid of black people.

A prosecutor may not appeal to racial prejudice to obtain a guilty verdict. "Language ought not to be permitted which is calculated by . . . appeals to prejudice, to sweep jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Perry,* 254 Mass. 520, 531 (1926). See *Commonwealth* v. *Kazules,* 246 Mass. 564, 566 (1923); *Commonwealth* v. *Graziano,* 368 Mass. 325, 331-333 (1975); *Commonwealth* v. *Mahdi,* 388 Mass. 679, 693 (1983). That does not mean that in every case it is improper for race to be mentioned. Compare *Commonwealth* v. *Boyd,* 367 Mass. 169, 184-185 (1975). The most significant factor in determining whether racial references are improper is the extent to which they have probative value with respect to the issues at trial. See *Commonwealth* v. *Kazules,* 246 Mass. at 566; *Commonwealth* v. *Mahdi,* 388 Mass. at 693. Even where questioning about race has some probative value, whether or not there is an objection, a trial judge ought to balance the probative value of the evidence against the potential prejudice to a criminal defendant. See *Commonwealth* v. *Boyd,* 367 Mass. at 185.

A rape victim may testify as to the reason she failed to seek help or make a prompt report of the rape. *Commonwealth* v. *Rollo,* 203 Mass. 354, 355 (1909). *Commonwealth* v. *Colangelo,* 256 Mass. 155, 166 (1926), overruled on other grounds, *Commonwealth* v. *Howard,* 355 Mass. 526, 529 (1969). *Glover* v. *Callahan,* 299 Mass. 55, 57 (1937). 4 Wig-

more, Evidence § 1135(1)(c) (Chadbourn rev. ed. 1972). Compare *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 & n.5 (1982); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 479-480 (1986). In the present case, where the victim's credibility on consent was the key issue at trial, the reason for her reluctance to report her predicament to those who were in a position to help her was highly probative of the defendant's guilt. Unlike instances of improper racial stereotyping, there was no attempt to suggest that, because the individuals involved were black, they acted in a certain way. Contrast *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 717-718 (1989). Rather, the questions related to the thoughts in the victim's mind, whether those thoughts were justified or not, which caused her not to complain or seek help. Compare *Commonwealth* v. *Johnson*, 372 Mass. 185, 197 (1977).

Concededly, even such references to race have the potential for injecting into a trial some risk that a jury verdict might be based on racial prejudice. We do not think the risk materialized here. Defense counsel cross-examined the victim extensively on her testimony. He was also able to bring out through a Commonwealth witness who was friendly with the victim that the victim had an ongoing relationship with a black boyfriend, and the witness testified, further, that she did not believe that the victim was frightened of blacks. Moreover, experienced defense counsel[1] did not see fit to object to the line of questioning now challenged on appeal. It is true that when the prosecutor, on a few occasions, sought to ask a witness "what type of person" a particular individual was or "what type of neighborhood" a particular location was, defense counsel objected, but the prosecutor immediately rephrased the questions and put them to the witnesses without further objection. Defense counsel's general failure to object may well have been tactical. Testimony from one who had a black boyfriend that, after being raped, she failed to seek help because she was afraid of blacks might have

---

[1]Appellate counsel was not trial counsel.

made her appear less credible in the eyes of the jury, and her credibility was crucial to the case. Moreover, the elaborate jury selection process provided the defendant with significant protection against a verdict based upon racial bias. After obtaining the defendant's consent in a personal colloquy with him, the judge conducted an individual voir dire with each potential juror on the subject of racial bias. As a result of the questioning, six prospective jurors who were white, and none who were black, were excluded from the venire. At least three black persons were selected as jurors. Significantly, on one of the indictments tried, charging assault and battery on a police officer, the jury acquitted the defendant. On the whole, we do not think that the questioning on race deprived the defendant of a fair trial.

We have reviewed the prosecutor's closing argument, to which there was no objection, and find no substantial risk of a miscarriage of justice. One brief reference to the area in which the incidents took place as "that location" could have been interpreted as a reference to the racial character of the neighborhood. However, the term was used in reference to the victim's failure to report the rape and was based upon evidence. Nor did one brief instance, to which there was also no objection, in which the judge may have misspoken during his charge create a substantial risk of a miscarriage of justice. The instructions as a whole clearly conveyed to the jury the notion that, to be found guilty, the defendant had to have been responsible for any force or threat of force causing the victim to be in fear.

*Judgments affirmed.*

BROWN, J. (concurring). I find most objectionable the manner in which the prosecutor framed his questions in an effort to bring out the reasons why the victim did not seek assistance when in her perilous situation. The prosecutor prompted the witnesses by subtly injecting the racial character of the neighborhood and the persons. I would be much more comfortable if the prosecutor had not initially asked

the victim and the other witness such questions as "what type [*sic*] of person" and "what kind [*sic*] of neighborhood" were involved in this matter. It cannot be said too often that care must be taken not to exploit, even inferentially, latent racial paranoia. I again harken back to the advice (constantly repeated) of our Supreme Judicial Court: There is no substitute for advance preparation. Cf. *Commonwealth* v. *Haas*, 373 Mass. 545, 557 & n.11 (1977).

I reluctantly concur, however, because of (1) the paucity of the objections to the inappropriately phrased questions and (2) the lack of objections to the closing argument and the judge's instructions and because, in light of the sensitive and careful "individual voir dire [of] each potential juror on the subject of racial bias," it is difficult to conclude that there was a substantial risk of a miscarriage of justice.