41 A.3d 1261 (2012)
In re L.C., Appellant.
No. 09-FS-164.
District of Columbia Court of Appeals.
Argued March 20, 2012.
Decided April 26, 2012.
*1262 Sloan S.J. Johnston, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.
John J. Woykovsky, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for the District of Columbia.
Before WASHINGTON, Chief Judge, OBERLY, Associate Judge, and KING, Senior Judge.
OBERLY, Associate Judge:
After a bench trial, appellant L.C. was found guilty of first-degree sexual abuse, in violation of D.C.Code § 22-3302 (2001), and first-degree child sexual abuse, in violation of D.C.Code § 22-3008 (2001). On appeal, L.C. claims that the trial court erred in admitting, in a bench trial, the complaining witness's out-of-court statements about the sexual assault. Holding that the report-of-rape exception to the hearsay rule applies in bench trials as well as in jury trials, we affirm.

I. Factual and Procedural Background
In the summer of 2008, A.M., a ten-year-old girl, visited a public swimming pool along with other campers and counselors from the summer camp she attended. While playing in the crowded pool with her friends, A.M. encountered L.C., a fourteen-year-old boy who was not a fellow camper. A.M. testified that L.C. tried to play with her, including dunking her in the water and picking her up and throwing her into the water. A.M. did not want to play with L.C. and moved away from him; L.C. followed her at first but stopped when a male counselor told him to leave A.M. alone.
A.M. further testified that, when all of the children were getting out of the pool, L.C. grabbed A.M.'s foot and dragged her to the side of the pool. Although she tried to fight him off, he pushed her against the wall of the pool, pulled down the bottom of her two-piece bathing suit, put his hand over her mouth, and penetrated her vagina with his penis. He then told her that if she told anyone, he would "get his peoples," which she took as a threat that he would hurt her if she told anyone what happened. A.M. retrieved her bathing suit bottom, which had sunk to the bottom of the pool, put it back on, and ran to the bathroom. A.M. testified that neither the lifeguards nor the camp counselors were paying attention to the events in the pool at the time of the assault.
A female camp counselor testified that she saw A.M. crying in the changing area. A.M. would not tell the female counselor what was wrong but agreed to speak with the camp director. On the way to speak with the camp director, A.M. and the female counselor encountered the male counselor who previously had told L.C. to leave A.M. alone. The male counselor testified that A.M. looked depressed and that he asked her what was wrong. When she was initially reluctant to tell him why she was upset, he asked whether L.C. had touched her in the pool; A.M. responded *1263 affirmatively. A.M. also told the male counselor that L.C. touched and entered her "private area" with his penis. The camp director testified that, when she spoke with A.M. later that day, A.M. was holding her stomach and crying; A.M. told the camp director that a boy had touched her in the pool.
A.M. was taken to Children's National Medical Center, where she was examined by a Sexual Assault Nurse Examiner. The nurse testified that A.M. told her that L.C. pulled A.M. underwater, pushed her up against the wall, removed her bathing suit bottom, and penetrated her. The nurse testified further that her medical examination of A.M. revealed that she had a "small amount of swelling" in her vaginal area but no other physical injuries or bleeding. The nurse stated that swelling is consistent with penetration as well as other, hygiene-related issues.
Before trial, L.C. moved to exclude from trial all references to A.M.'s out-of-court reports of sexual assault, arguing that the "report-of-rape" exception to the hearsay rule does not apply in bench trials. The trial court denied L.C.'s motion to exclude, holding that "whatever evidence is admissible in a jury trial is admissible in a bench trial." In its post-trial findings of fact, the trial court specifically credited the trial testimony of A.M., finding that her demeanor evinced sincerity and that her testimony was consistent and reliable. The trial court also noted that A.M.'s testimony that she reported the assault to the nurse, the male counselor, and the camp director was corroborated by each of these witnesses. Based on these findings, the trial court found L.C. guilty of first-degree sexual abuse and first-degree sexual abuse of a child.

II. Discussion
The sole issue on appeal is whether the "report-of-rape" exception to the hearsay rule applies in bench trials. We previously have held that the report-of-rape rule, which has its origin in the requirement that allegations of rape be corroborated by evidence in addition to the trial testimony of the complaining witness, survived this jurisdiction's abolition of the corroboration requirement. Battle v. United States, 630 A.2d 211, 213 (D.C.1993). We now hold that the report-of-rape rule applies in bench trials to the same extent that it applies in jury trials.
A "decision on the admissibility of evidence ... is committed to the sound discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion. Whether or not a particular hearsay exception applies to certain statements is a question of law which we review de novo." Dyson v. United States, 848 A.2d 603, 611 (D.C.2004) (citation omitted) (internal quotation marks omitted). Prior consistent statements are generally inadmissible to bolster the credibility of a witness on the theory that "mere repetition does not imply veracity." Daye v. United States, 733 A.2d 321, 325 (D.C.1999) (internal quotation marks omitted). Because, historically, "the law has treated sex crimes somewhat differently from other crimes," there is an exception to this general rule for prior consistent statements about sexual assault. Battle, 630 A.2d at 216. Under the report-of-rape rule, statements about a sexual assault made by victims of the assault are admissible in evidence "not for the truth of the matter asserted, but merely for the fact that the statement was made." Id. at 216-17 (quotation marks omitted). Testimony admitted under the report-of-rape rule properly includes "only enough details to show that the complainant reported the sexual assault charged." Id. at 223.
In Battle, we explained the continued need for the report-of-rape rule even after the abolition of the corroboration requirement: (1) "evidence of a complaint of rape *1264 negates jurors' assumptions that if there is no evidence of a complaint, no complaint was made"; (2) "such evidence negates prejudices held by some jurors by showing that the victim behaved as society traditionally has expected sexual assault victims to act, i.e., by promptly telling someone of the crime"; and (3) "such evidence rebuts an implied charge of recent fabrication, which springs from some jurors' assumptions that sexual offense victims are generally lying and that the victim's failure to report the crime promptly is inconsistent with the victim's current statement that the assault occurred." Battle, 630 A.2d at 217. L.C. argues that the report-of-rape rule makes sense only in the context of jury trials because the prejudices and assumptions we noted in Battle are harbored by jurors, and not by judges.
Judges, like jurors, are part of our society. Although they differ in some respectsmainly that judges, unlike the average juror, are specially trained in the reasons animating the rules of evidence we cannot presume that judges are immune from the societal assumptions that undergird the report-of-rape rule. L.C.'s argument assumes that judges sitting as finders of fact will weigh evidence in a more dispassionate way than will jurors; this assumption belies the reasons underlying our nation's historical respect for the "common-sense judgment of a jury," which we prefer in many cases to the "more tutored but perhaps less sympathetic reaction of the single judge." Duncan v. Louisiana, 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Indeed, as the Supreme Court has noted, we enshrined the jury system in our Constitution in part because we believe that the jury serves as a bulwark against injustice that may be caused by "the compliant, biased, or eccentric judge." Id. Moreover, L.C. has provided no support for his contention that judges are less susceptible to prejudice than are jurors. We therefore reject L.C.'s premise that jurors, but not judges, may be infected with preconceptions.
We suggested nothing to the contrary in Battle. L.C. makes much of the fact that, in Battle, we focused on "jurors' assumptions" and "prejudices held by some jurors." Battle, 630 A.2d at 217 (emphasis added). Battle was an appeal from a jury trial; it is only natural, therefore, that our language would reflect the case before us by referring to jurors' assumptions and prejudices. Our reference to jurors was not intended, and should not be taken, to exclude judges in bench trials from its reasoning. Indeed, a fairer reading of Battle demonstrates that the report-of-rape rule is not rooted in juror prejudices but rather in societal prejudices, as those prejudices are reflected by jurors. As we noted in Battle, one historical basis for the report-of-rape rule was to explain the apparent absence of a complaint of a rape when "society perceives that it would have been natural" for a victim to have done so. Id. at 216 (emphasis added). We also noted that reports of rape combat prejudices based on the way that "society traditionally has expected sexual assault victims to act." Id. at 217 (emphasis added). Because judges are part of society, and because an assumption about what is "natural" may be harbored by a judge as well as by a juror, this court has not questioned the admission of evidence pursuant to the report-of-rape rule in bench trials. In Cullen v. United States, 886 A.2d 870, 872 n. 2 (D.C.2005), we stated that "testimony was properly admitted under the report of rape rule" in a bench trial. Likewise, in Mattete v. United States, 902 A.2d 113, 117 (D.C.2006), we implicitly endorsed the admission of report-of-rape testimony in a bench trial when we considered whether the testimony exceeded the scope of the Battle exception.
Finally, L.C.'s argument that the report-of-rape exception should not apply in *1265 bench trials is belied by the fact that some of the arguments made by L.C. specifically seek to evoke the very prejudices and assumptions that the rule was created to address. At trial, L.C. argued expressly that A.M.'s testimony was not credible because she "hadn't said anything to anybody about why she was crying" until asked specifically by the male counselor. On appeal, similarly, L.C. suggested that A.M.'s testimony was not credible because "she did not say anything at first" when the female counselor asked her what was wrong. The implication of these arguments is that, if A.M. had been telling the truth, she would have told the female counselor rather than waited for a few minutes to tell the male counselor. As noted, it is precisely the assumption that "the victim's failure to report the crime promptly is inconsistent with the victim's current statement that the assault occurred" that underlay our retention of the report-of-rape rule in Battle. Battle, 630 A.2d at 217.[*]

III. Conclusion
For the reasons explained above, we hold that the report-of-rape exception to the hearsay rule applies in bench trials to the same extent as in jury trials. The judgment of the trial court is, accordingly,
Affirmed.
NOTES
[*] L.C. argued that the trial court erroneously based its assessment of A.M.'s credibility on the fact that the male counselor, the camp director, and the nurse each corroborated A.M.'s testimony that she reported the assault to them. A review of the trial court's findings, however, reveals that the trial court's reliance on this testimony was entirely within the scope of the report-of-rape rule; that is, in accordance with Battle, the court considered it "not for the truth of the matter asserted, but merely for the fact that the statement was made." Battle, 630 A.2d at 216-17. We note, however, that because reports of rape may be admitted only for the fact that the report was made, there may be a limit to the number of reports that may be admitted before the evidence might be excluded as cumulative. That question is not presented here, and we decline to opine on the maximum number of reports of rape that may be admitted under Battle and its progeny.