**Enrique ROBLES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11–CM–243.**

District of Columbia Court of Appeals.

Argued May 15, 2012.

Decided Aug. 23, 2012.

Lee R. Goebes, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

John P. Tavana, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time, and Mary B. McCord and Jeffrey T. Cook, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

Appellant Enrique Robles was charged with two counts each of misdemeanor sexual abuse of two women, S.L. and M.V., in violation of D.C.Code § 22–3006 (2001).[1] Following a bench trial, the judge found Robles guilty of the two counts relating to S.L. and acquitted him of the counts relating to M.V. On appeal, Robles argues mainly that the judge erroneously denied his motion to sever the counts pertaining to M.V. from those related to S.L., concluding—mistakenly—that evidence of the two sets of charges would be mutually admissible in separate trials to show his intent to have sexual contact with the complainants, without their permission, to gratify his sexual desire. Although the judge's meticulous findings of guilty and not guilty on the respective charges make this a very close case whether Robles was

---

1. D.C.Code § 22–3006 ("Misdemeanor Sexual Abuse") provides that "[w]hoever engages in a sexual act or sexual contact with another person and who should have knowledge or reason to know that the act was committed without that other person's permission, shall be imprisoned for not more than 180 days and, in addition, may be fined in an amount not to exceed $1,000." D.C.Code § 22– 3001(9) (Supp.2012) defines "sexual contact" to mean "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

prejudiced by the continued joinder of the charges, we agree with Robles that the refusal to sever charges was erroneous and unfairly prejudicial in the circumstances of the case, and therefore reverse his convictions.

## I.

Both alleged pairs of assaults took place at the Ronald Reagan Building in Washington, D.C., where Robles supervised M.V., employed as a dishwasher, and S.L., who was a steward. On an occasion in June 2009, Robles asked M.V. to help him in a storeroom. There he closed and locked the door and, over her resistance, repeatedly touched her sexually by, among other things, pressing his clothed penis against her genitalia and asking her to disrobe. In August 2009, Robles engaged in similar behavior in the storeroom, where he touched M.V. on the buttocks and vagina and, when she pushed him away, grabbed her hand and placed it on his clothed penis and tried to show it to her.

S.L. began experiencing Robles's advances in 2008 when he flirted with her and "tried to touch her and other stuff." One day in May 2009, unable to arrange transportation home from work, she accepted his offer of a ride home. During the ride Robles told her he wanted to have sex with her and, despite her refusal, pushed his hand into her crotch and tried to touch her genitalia through her clothes. He made clear his desire to have sex with her, and to her question of how he intended to do that replied, "you'll see."

One day in June 2009 during an evening shift, Robles led S.L. to the storeroom, closed the door behind them, and repeatedly forced himself on her, restraining her and pulling at her clothing. Eventually he pinned her against the wall, pulled her pants down, and forced his penis between her thighs and between her labia. She struggled and broke free, but for a time he prevented her from leaving the room, telling her that his "life [was] in [her] hands," which she understood to mean he would lose his job if she reported the assault.

S.L. initially did not report either incident to management or the police, but in February 2010 she related the assaults to another work supervisor, from whom she wanted help in finding another job. She also reported them to her daughter and sister, as well as to M.V. Robles was interviewed that same month by agents of the Federal Protective Service; he at first denied any sexual contact with S.L. but eventually insisted that the sexual encounter was consensual.

Following trial, the judge acquitted Robles of the two counts of sexual abuse of M.V.,[2] but found him guilty of both counts of misdemeanor sexual abuse against S.L. Crediting S.L.'s description of each of the assaults and her explanations for the delay in reporting them, and doubting the credibility of some of Robles's statements to investigators denying unconsented sexual contacts, the judge found beyond a reasonable doubt that Robles had engaged in the charged sexual contacts, in each instance without permission and with the requisite intent to gratify his own sexual desire.

**2.** In finding reasonable doubt whether Robles knew or should have known that he lacked M.V.'s permission to engage in the sexual acts, the judge "was troubled by ... testimony of M.V. as to what happened after she left the job," namely, repeated telephone calls she had made to the number he used and her sending him a photograph of herself, all of which left the judge "with a doubt about whether at some point there was a relationship of some sort between [M.V.] and [Robles]."

## II.

■ When Robles moved before trial to sever the two sets of offenses under Super. Ct.Crim. R. 14,[3] the government replied that severance was unnecessary because evidence of the crimes would be mutually admissible in separate trials under *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964), and its progeny to show, *inter alia*, Robles's intent to commit each offense. The trial judge agreed, stating her belief that each charged count "involves either a specific intent crime or a possible raising of a consent defense."[4] On the basis of the proffered evidence, the judge found that "not only [are] there similarities" between the two sets of counts, but that the "similarities go to the defendant's intent to have sexual contact against [the] complainants without their consent," and—owing to the expected consent defense—also "[go] to motive . . . and absence of mistake or accident."

### A.

On appeal, the government in its brief scarcely defends this ruling, in a single footnote sentence stating without elaboration (and with but one citation) that it "does not concede that the trial court's finding of mutual admissibility was in error" (Br. for Appellee at 19 n. 12). At oral argument, similarly, when asked its position on the ruling, counsel for the government said nothing to support it but passed directly to the argument made almost exclusively in the government's brief—and which we discuss below—that, in any case, the judge in this bench trial never in fact amalgamated the evidence of the two sets of charges, even as to Robles's intent or the defense of consent, in finding him guilty of sexual abuse of S.L.

■ Although we thus could treat as conceded the error in the judge's ruling of mutual admissibility, *see Rose v. United States*, 629 A.2d 526, 535–36 (D.C.1993),[5] the government is wise not to advocate for the ruling in any event. "The *Drew* exceptions for intent, motive, and absence of mistake are applicable *only* when the defendant's state of mind is a material or genuine issue in the case and not merely a formal element of the crime charged." *Howard v. United States*, 663 A.2d 524, 528 n. 6 (D.C.1995) (emphasis in original). The intent required by § 22–3006 was only that Robles had sexual contact with the complainants intending (as relevant here) to "gratify [his] sexual desire." See note 1, *supra*. Robles, with one exception, did not dispute that intent.[6] As to both M.V. and S.L., his defense instead was that the complainants had been willing participants in sexual activity. Section 22–3006 further

---

3. He also alleged misjoinder under Rule 8(a), but does not contest the judge's rejection of that ground for severance.

4. Somewhat mirroring the "without the other's permission" element of § 22–3006, D.C.Code § 22–3007 (Supp.2012) provides that "[c]onsent by the victim is a defense . . . to a prosecution under § 22–3006 . . . ."

5. *See also Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n. 9 (D.C.2001) ("The bare mention of this claim in a footnote in [the party's] brief . . . does not suffice to preserve the argument for our consideration.")

6. The sole exception was as to Count One, his alleged sexual contact with S.L. while driving her home, which he denied had occurred. Since, as to that charge, he "denie[d] participation in the conduct . . . alleged to constitute the crime," his state of mind was "not a material issue for purposes of admitting other crimes evidence." *Thompson v. United States*, 546 A.2d 414, 422 (D.C.1988).

A trial judge, of course, has a continuing duty to monitor unfair prejudice from joinder as the evidence at trial unfolds and the material issues crystallize. *See Evans v. United States*, 392 A.2d 1015, 1024 (D.C.1978).

requires proof that the defendant "should have knowledge or *reason to know* that the act was committed without th[e] other person's permission" (emphasis added), but that objective mental state also was not genuinely at issue: everyone agreed that if the complainants were believed in their testimony that they repeatedly spurned Robles's advances, there was no room for Robles to misunderstand their withheld permission.

Additionally, the fact that M.V. may not have consented showed nothing as to whether S.L. consented to sexual activity with Robles. *See Hurst v. Maryland,* 400 Md. 397, 929 A.2d 157, 163–64 (2007) (rejecting argument that the prior complainant's "testimony that she did not consent to sexual relations with [Hurst wa]s relevant to [Hurst's] defense that [the complainant in this case] consented to sexual activity with him"; "[e]vidence that a third party did not consent to sexual intercourse with [the defendant] in the past has no bearing on whether [the complainant in the instant case] consented to sexual activity"); *accord, e.g., Lovely v. United States,* 169 F.2d 386, 390 (4th Cir.1948); *State v. Christensen,* 414 N.W.2d 843, 847 (Iowa Ct.App.1987).

In short, given Robles's defense and the limited proof requirements of § 22–3006, his intent or state of mind was not "a material or genuine issue in the case," *Howard,* 663 A.2d at 528 n. 6, and the judge's ruling that the facts of the M.V. encounters were admissible to prove Robles's intent in the S.L. sexual contacts (and vice-versa) was error.[7]

## B.

■ The government's argument for affirmance, as pointed out, is that the judge's ruling of mutual admissibility did not prejudice Robles because, in finding him guilty of the S.L. sexual contacts, the judge gave no indication that she had relied on the M.V. contacts in finding that he knew S.L. had withheld permission for his sexual advances. The government points out too that in denying severance of the counts, the judge made clear from the start that she would keep the two sets of charges separate in her mind and would "be able to not cumulate evidence of [the] offenses charged to find ... him guilty when, if considered separately, I would not so find."

There is no question the judge believed that, in hearing evidence of the charged crimes, she could separate the two sets of charges in her mind. Thus, in denying severance she stated "that the evidence of one of the crimes that's alleged will not be used by this court to infer a criminal disposition on the part of [Robles] from which his guilt of the other charged offenses is found." Yet, in denying severance the judge unmistakably found each pair of counts probative of Robles's intent as to the other pair, and she allowed the government to present and argue its evidence with that evidentiary link in mind. Significantly, at the close of the evidence, she urged the parties, "just for purposes of your argument, to not join the two together," but qualified this by telling the prosecutor the proof "needs to be separated out in terms of what happened to each [victim]" "[u]nless you're getting to an issue of intent " (emphasis added). Further, she

---

7. In contrast to § 22–3006, § 22–3002 ("First degree sexual abuse") requires proof that the defendant (*inter alia* ) engaged in a sexual act with another person "[b]y using force against that other person." D.C.Code § 22– 3002(a)(1) (Supp.2012). We have no occasion here to consider the mutual admissibility under *Drew* of separate forcible acts against different complainants. *See Crisafi v. United States,* 383 A.2d 1, 5 (D.C.1978).

made clear that her finding of mutual admissibility was not just hypothetical (*i.e.*, the evidence *would* be mutually admissible in separate trials), but had bearing on her consideration of the evidence in this case. Applying this court's additional proof requirement for admitting other crimes evidence,[8] she found that the non-consensual M.V. sexual contacts had been proved by clear and convincing evidence, though she later found reasonable doubt as to them. In short, the government's argument that the judge convicted Robles of the S.L. contacts without consideration of the M.V. incidents has formidable obstacles to overcome.

At the same time, as the government points out, the judge took some twenty-two transcript pages to state on the record her findings of why Robles was guilty on the S.L. counts, and nowhere in those findings is there reference to the M.V. events as affecting her finding that Robles intended twice to gratify himself with S.L. without her permission. The judge's findings were neither superficial nor conclusory. She painstakingly explained why she found S.L. "a very credible witness"; why S.L.'s delayed reports of the sexual contacts were understandable in the circumstances, including how her demeanor showed that the contacts had affected her negatively; why her possible motives to fabricate advanced by the defense were unconvincing and why the inconsistencies in her accounts of the abuse were minor; and why Robles's own shifting accounts to investigators of the S.L. incidents and aspects of his story that "d[idn't] make any sense in terms of credibility" corroborated S.L.'s version of the events. From all of this, the government infers that the judge, although willing to consider proof of the unconsented M.V. contacts as relevant to Robles's intent as to S.L., ultimately found that proof redundant and unnecessary to her decision of guilt on the S.L. counts.

Altogether, the question of prejudice in these circumstances has a knife's-edge quality, where the judge heard and expressly allowed the evidence to be argued on the premise that proof of each count was probative of the others, but said nothing in her findings suggesting she had amalgamated them even as to intent. Robles, for his part, argues that the judge's silence in her findings on the cross-relevance of the incidents was no more telling than the absence there of any disavowal of the view she had reached at the outset, and reiterated as late as summation, that the M.V. allegations tended to prove the S.L. charges and vice-versa. Robles also points to our decisions counseling that it may require too much in the way of mental gymnastics for a fact-finder to ignore other crimes evidence inadmissible under *Drew* but as close in nature to the conviction crimes as the M.V. sexual contacts were here. *See Tinsley v. United States,* 368 A.2d 531, 536–37 (D.C.1976).

We reverse the convictions, because when the issue is whether prejudice arose from an erroneous court ruling—and the judge's finding of mutual admissibility was error—ties must go to the defendant. Put differently, the government has the burden under *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), of persuading us that the judge's findings of guilt were not influenced by her ruling on relevance. *See, e.g., McFerguson v. United States,* 870 A.2d 1199, 1205 (D.C.2005);

---

**8.** *See Muschette v. United States,* 936 A.2d 791, 796–97 (D.C.2007) ("When the prior bad act sought to be introduced under a *Drew* exception has not been established by an adjudication in a separate proceeding, then it must be established by clear and convincing evidence before it may be admitted at trial.") (Citation and internal quotation marks omitted.)

*Thompson,* 546 A.2d at 428. Since we cannot say that it is "highly probable" on this record that the error did not affect the verdict, *Washington v. United States,* 965 A.2d 35, 41 (D.C.2009) (emphasis omitted), we must set aside Robles's convictions.

## III.

■ Despite the reversal, there is another issue we must address because it determines the admissibility of evidence the government almost certainly would seek to introduce if it retries Robles on the S.L. charges. Robles argues that the judge erroneously admitted, under the report-of-rape rule, statements S.L. made to her supervisor, her daughter, and M.V. that Robles had sexually assaulted her on the occasions alleged. Robles argues that, although the charged sexual contacts took place in May and June 2009, the reports were all made eight months later in February 2010, and cannot fairly be said to qualify as the "prompt" reports of sexual assault this court has held admissible in *Battle v. United States,* 630 A.2d 211 (D.C. 1993), and *Fitzgerald v. United States,* 443 A.2d 1295 (D.C.1982) (en banc).

The issue was argued at length in the trial court,[9] where the judge found persuasive S.L.'s reasons why she had delayed in reporting the assaults, and thus why the reports were reliable enough to be considered. An eight-month delay in reporting certainly tests a rule meant to counteract juror misconceptions (or "biases") "that the only normal behavior of a sexual abuse victim is to report the offense *almost immediately,*" *Battle,* 630 A.2d at 221 (emphasis added), but we conclude that the

judge, after hearing S.L. testify, did not err in finding her reasons for the delay sufficient to justify consideration of the reports in the limited manner the rule permits.[10]

It is true that the promptness or "freshness" of a report of sexual assault was repeatedly mentioned in *Battle,* but we have not deemed this a talisman for admissibility under the rule, instead requiring examination of the reasons for the particular delay:

> [D]elay in making the complaint should not be fatal to its admissibility. The only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense.

*Fitzgerald,* 443 A.2d at 1305 (internal quotation marks omitted). Other courts have agreed with this analysis, recognizing the wholly understandable reasons that may cause prolonged delay in the mention to others of abuse so degrading and often hurtful to self-esteem. *See, e.g., Corvin v. Commonwealth,* 13 Va.App. 296, 411 S.E.2d 235, 237 (1991) ("The victim's failure to immediately report the incident did not render his testimony inherently incredible as a matter of law"; provided "there is a credible explanation for such delay," the jury "was entitled to attribute such significance as it deemed appropriate to [the] delay"); *Commonwealth v. Washington,* 28 Mass.App.Ct. 271, 549 N.E.2d 446, 447–48 (1990) ("A rape victim may testify as to the reason she failed to seek help or make a prompt report of the rape"; ". . . where the victim's credibility on consent was the

---

9. Robles also argued that the report-of-rape exception should not apply in bench trials, but has abandoned that argument in light of *In re L.C.,* 41 A.3d 1261 (D.C.2012).

10. Under the report-of-rape rule, "testimony about the complainant's prior statements

[can] properly include only enough details to show that the complainant reported the sexual assault charged." *Battle,* 630 A.2d at 223; *see Fitzgerald,* 443 A.2d at 1305 (admitted testimony "should be limited to the fact that a complaint was made").

key issue at trial, the reason for her reluctance to report her predicament to those ... in a position to help her was highly probable...."); *State v. Bethune*, 232 N.J.Super. 532, 557 A.2d 1025, 1028 (App. Div.1989) ("The label 'fresh complaint' is not rigidly adhered to, as testimony of this nature is competent even when it is not truly 'fresh'"; "[t]he length of the delay is a factor to be considered as relevant to the weight to be given to the fresh complaint under all of the accompanying circumstances.").[11]

Here, the trial judge summarized and found convincing S.L.'s explanation for the delays in reporting. As to the first sexual contact in Robles's car: "[S]he explained that she didn't report it because it did not happen at work, and in addition, she was scared and embarrassed by the incident." Concerning the second assault in the storeroom, she did not report it right away because

> [w]hen she would see [Robles] at work it would make her feel sick. She wanted to quit. She couldn't find another job. Her blood pressure went high. She became sick, depressed and didn't want to go to work. She was embarrassed about what had happened.

S.L.'s daughter too noticed that "her mother became withdrawn, more dependent ... and would lock herself in her room," testimony which the judge found confirmed S.L.'s statement "about how these incidents had affected her."

Robles argues that accepting this explanation of "embarrassment, shame, and fear" as adequate for admissibility despite delay would "swallow the [explanation] rule laid down in *Fitzgerald*," as "virtually

all complainants, real victims or not, ... can credibly claim" some level of distress of this kind (Reply Br. for App. at 10). But S.L. was not "all complainants." The trial judge, unlike this court, was able to hear her testimony and assess firsthand the genuineness and intensity of the emotions she claimed had delayed her mention of the acts to others. We have no reason to substitute our judgment of the reliability of the reports for the judge's, and thus agree with her that the delay in reporting "affect[ed] the weight of the evidence in [her] mind[ ]," not the admissibility of the reports. *Fitzgerald*, 443 A.2d at 1305.

*Reversed and remanded.*

---

11. Some decisions have allowed special flexibility under the rule for delayed reporting by child victims, *e.g., Commonwealth v. Amirault*, 404 Mass. 221, 535 N.E.2d 193, 198–200 (1989), but in keeping with *Fitzgerald, supra,* we believe age is one factor among others—including, *e.g.*, the employment relationship of the victim and alleged assailant—to be considered by the judge in evaluating the reasons for a delayed report.